UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

| | | |
|---|---|---|
| DAVID W., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case # 1:21-cv-275-DB |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | MEMORANDUM |
| | § | DECISION AND ORDER |
| Defendant. | § | |

## <u>INTRODUCTION</u>

Plaintiff David W. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner"), that denied his application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 13).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 7, 8. Plaintiff also filed a reply brief. *See* ECF No. 10. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 7) is **DENIED**, and the Commissioner's motion for judgment on the pleadings (ECF No. 8) is **GRANTED**.

## <u>BACKGROUND</u>

Plaintiff protectively filed an application for SSI on July 16, 2018, alleging disability beginning January 7, 2014 (the disability onset date), due to obesity, diabetes mellitus type II, osteoarthritis and patellofemoral syndrome of the right knee. Transcript ("Tr.") 13, 15. Plaintiff's claim was denied initially on September 27, 2018, after which he requested an administrative hearing. Tr. 13. On January 31, 2020, Administrative Law Judge Michael McKenna ("the ALJ")

conducted a video hearing in Hartford, Connecticut. *Id*. Plaintiff appeared and testified from Buffalo, New York, and was represented by Brian P. Kujawa, a non-attorney representative. *Id*. William T. Slaven, an impartial vocational expert, also appeared and testified at the hearing. *Id*.

The ALJ issued an unfavorable decision on March 11, 2020, finding that Plaintiff was not disabled. Tr. 13-26. On January 13, 2021, the Appeals Council denied Plaintiff's request for further review. Tr. 1-7. The ALJ's March 11, 2020 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I.    District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

### II.   The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ

proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## <u>ADMINISTRATIVE LAW JUDGE'S FINDINGS</u>

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in his March 11, 2020 decision:

1. The claimant has not engaged in substantial gainful activity since July 16, 2018, the application date (20 CFR 416.971 *et seq*.).

2. The claimant has the following severe impairments: obesity, diabetes mellitus type II, osteoarthritis and patellofemoral syndrome of the right knee (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.967(b),[1] except he can occasionally lift and carry 20 pounds; frequently lift and carry 10 pounds; stand and walk for 4 hours in an 8-hour day; sit for 6 hours in an 8-hour day; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; and is able to use a cane to ambulate.

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on August 27, 1971 and was 46 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since July 16, 2018, the date the application was filed (20 CFR 416.920(g)).

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

Tr. 13-26.

Accordingly, the ALJ determined that, based on the application for supplemental security income protectively filed on July 16, 2018, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act. Tr. 26.

## ANALYSIS

Plaintiff asserts two points of error, both of which find fault in the ALJ's analysis of the opinion evidence. First, Plaintiff argues that "the ALJ failed to properly evaluate and explain medical opinion evidence and reconcile it with the RFC finding." *See* ECF No. 7-1 at 2, 9-16. According to Plaintiff, the ALJ conducted an "improper selective reading when he accepted the most restrictive portions of medical opinions . . . and evidence while rejecting the most restrictive portions . . . ." *See id*. at 9. Plaintiff's second point also challenges the ALJ's analysis of the opinion evidence, but here, Plaintiff argues that the ALJ should have recontacted treating physicians Sharon Nadarajah, M.D. ("Dr. Nadarajah"), and Harry Shehata, M.D. ("Dr. Shehata"), to "clarify" their opinions before finding them "vague and incomplete." *See id*. at 16-17.

The Commissioner argues in response that the ALJ properly considered the totality of the evidence in the record, including the various opinions and prior administrative medical findings, the objective medical findings, and Plaintiff's wide-ranging daily activities, and reasonably concluded that Plaintiff's conditions did not preclude the performance of light work with the physical limitations noted in the RFC. *See* ECF No. 8-1 at 8-23. Further, argues the Commissioner, the ALJ properly articulated his rationale for the persuasiveness assigned to the various medical opinions, including those of Drs. Nadarajah and Shehata. *See id*.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v.*

*Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review of the record in this case, the Court finds that the ALJ's RFC finding was supported by Plaintiff's physical examination findings, which were remarkable only for minimal right knee swelling and tenderness, and his self-reported abilities and limitations, as well as the opinion evidence, including the opinions of Plaintiff's own medical sources, a consultative examination report, and the prior administrative medical findings of a state agency physician. Accordingly, the Court finds no error.

A claimant's RFC is the most he can still do despite his limitations and is assessed based on an evaluation of all relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); SSR 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). At the hearing level, the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. § 404.1546(c); SSR 96-5p, 61 Fed. Reg. 34,471-01 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(d)(2) (stating the assessment of a claimant's RFC is reserved for the Commissioner). Determining a claimant's RFC is an issue reserved to the Commissioner, not a medical professional. *See* 20 C.F.R. § 416.927(d)(2) (indicating that "the final responsibility for deciding these issues [including RFC] is reserved to the Commissioner"); *Breinin v. Colvin*, No. 5:14-CV-01166(LEK TWD), 2015 WL 7749318, at *3 (N.D.N.Y. Oct. 15, 2015), *report and recommendation adopted*, 2015 WL 7738047 (N.D.N.Y. Dec. 1, 2015) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.").

Additionally, it is within the ALJ's discretion to resolve genuine conflicts in the evidence. *See Veino v Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). In so doing, the ALJ may "choose between properly submitted medical opinions." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). Moreover, an ALJ is free to reject portions of medical-opinion evidence not supported by objective evidence of record, while accepting those portions supported by the record. *See Veino*, 312 F.3d at 588. Indeed, an ALJ may formulate an RFC absent any medical opinions. "Where, [] the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (internal citations and quotation omitted).

Moreover, the ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [his] decision," because the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) (the RFC need not correspond to any particular medical opinion; rather, the ALJ weighs and synthesizes all evidence available to render an RFC finding consistent with the record as a whole); *Castle v. Colvin*, No. 1:15-CV-00113 (MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017) (The fact that the ALJ's RFC assessment did not perfectly match a medical opinion is not grounds for remand.).

Furthermore, the burden to provide evidence to establish the RFC lies with Plaintiff—not the Commissioner. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a); *see also Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) ("The applicant bears the burden of proof in the first four steps of the sequential inquiry . . . ."); *Mitchell v. Colvin*, No. 14-CV-303S, 2015 WL 3970996, at *4

(W.D.N.Y. June 30, 2015) ("It is, however, Plaintiff's burden to prove his RFC."); *Poupore v. Astrue*, 566 F.3d 303, 305-06 (2d Cir. 2009) (The burden is on Plaintiff to show that she cannot perform the RFC as found by the ALJ.).

Effective for claims filed on or after March 27, 2017, the Social Security Agency comprehensively revised its regulations governing medical opinion evidence creating a new regulatory framework. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15, 132-01 (March 27, 2017). Plaintiff filed his application on July 16, 2018, and therefore, the 2017 regulations are applicable to his claim.

First, the new regulations change how ALJs consider medical opinions and prior administrative findings.  The new regulations no longer use the term "treating source" and no longer make medical opinions from treating sources eligible for controlling weight. Rather, the new regulations instruct that, for claims filed on or after March 27, 2017, an ALJ cannot "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 416.920c(a) (2017).

Second, instead of assigning weight to medical opinions, as was required under the prior regulations, under the new rubric, the ALJ considers the persuasiveness of a medical opinion (or a prior administrative medical finding). *Id*. The source of the opinion is not the most important factor in evaluating its persuasive value. 20 C.F.R. § 416.920c(b)(2). Rather, the most important factors are supportability and consistency.  *Id*.

Third, not only do the new regulations alter the definition of a medical opinion and the way medical opinions are considered, but they also alter the way the ALJ discusses them in the text of

the decision. 20 C.F.R. § 416.920c(b)(2). After considering the relevant factors, the ALJ is not required to explain how he or she considered each factor. *Id*. Instead, when articulating his or her finding about whether an opinion is persuasive, the ALJ need only explain how he or she considered the "most important factors" of supportability and consistency. *Id*. Further, where a medical source provides multiple medical opinions, the ALJ need not address every medical opinion from the same source; rather, the ALJ need only provide a "single analysis." *Id*.

Fourth, the regulations governing claims filed on or after March 27, 2017 deem decisions by other governmental agencies and nongovernmental entities, disability examiner findings, and statements on issues reserved to the Commissioner (such as statements that a claimant is or is not disabled) as evidence that "is inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled." 20 C.F.R. § 416.920b(c)(1)-(3) (2017). The regulations also make clear that, for claims filed on or after March 27, 2017, "we will not provide any analysis about how we considered such evidence in our determination or decision" 20 C.F.R. § 416.920b(c).

Finally, Congress granted the Commissioner exceptionally broad rulemaking authority under the Act to promulgate rules and regulations "necessary or appropriate to carry out" the relevant statutory provisions and "to regulate and provide for the nature and extent of the proofs and evidence" required to establish the right to benefits under the Act. 42 U.S.C. § 405(a); *see also* 42 U.S.C. § 1383(d)(1) (making the provisions of 42 U.S.C. § 405(a) applicable to title XVI); 42 U.S.C. § 902(a)(5) ("The Commissioner may prescribe such rules and regulations as the Commissioner determines necessary or appropriate to carry out the functions of the Administration."); *Barnhart v. Walton*, 535 U.S. 212. 217-25 (2002) (deferring to the Commissioner's "considerable authority" to interpret the Act); *Heckler v. Campbell*, 461 U.S. 458, 466 (1983). Judicial review of regulations promulgated pursuant to 42 U.S.C. § 405(a) is narrow

and limited to determining whether they are arbitrary, capricious, or in excess of the Commissioner's authority. *Brown v. Yuckert*, 482 U.S. 137, 145 (1987) (citing *Heckler v. Campbell*, 461 U.S. at 466).

Contrary to Plaintiff's contentions, the ALJ in this case properly analyzed the opinion evidence and the other evidence of record when developing Plaintiff's RFC, and substantial evidence supports the ALJ's RFC finding. Tr. 18-22.  *See* 20 C.F.R. §§ 404.1527, 416.927. First, the ALJ properly considered the January 2017 and June 2018 findings and opinions of consultative examiner Hongbiao Liu, M.D. ("Dr. Liu"). Tr. 22, 331-33, 426-30. Based on his detailed examination in January 2017, Dr. Liu opined that Plaintiff had moderate limitations in prolonged walking, bending, kneeling, and overhead reaching, and that the use of a cane was medically necessary for balance and to limit pain. Tr. 22, 331-33. In June 2018, Dr. Liu examined again Plaintiff and opined that he could occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds; and he could walk, stand, sit, push/pull/bend, use his hands, climb, and use public transportation for two-to-four hours. Tr. 22, 426-30. Dr. Liu further opined that these limitations were expected to last six months. Tr. 429.

The ALJ found that Dr. Liu's opinions were partially supported by his examination findings. Tr. 22. For example, Dr. Liu observed that Plaintiff walked slowly with a cane; had normal stance; could rise from a chair with difficulty; had full range of motion of the upper extremities and right knee flexion to 140-150 degrees; stable and non-tender joints; full strength and full grip strength; intact dexterity, and some decreased sensation of the right lower extremity. Tr. 22, 331-33, 428. As the ALJ explained, these examination findings supported Dr. Liu's opined limits on Plaintiff's ability to stand, walk, lift, carry, and use of the hands, but they did not support a more restricted ability to sit, or the use of a cane for balance. Tr. 22, 331, 427. The ALJ explained

that while Plaintiff used the cane to walk at both consultative examinations, Dr. Liu observed Plaintiff had normal stance and full strength, and throughout the record, Plaintiff indicated he used the cane for walking short distances. Tr. 22, 331, 333, 385, 513, 516, 518. The ALJ also noted that Plaintiff otherwise retained intact strength and had normal stability. Tr. 22. Thus, with the noted exception to a sitting limitation and the need for a cane to balance, the ALJ reasonably found Dr. Liu's opinions persuasive because they were consistent with his examinations and the record evidence showing only mild limitations in range of motion of the right knee, mild-to-moderate tenderness of the knee, and intact upper extremity strength. Tr. 22. *See* 20 C.F.R. §§ 416.920c(c)(1) (supportability), 416.920c(c)(2) (consistency).

The ALJ also properly considered the June 2018 and April 2019 opinions of Plaintiff's primary care provider, Dr. Nadarajah. Tr. 22-23. In June 2018, Dr. Nadarajah opined that Plaintiff had a moderate limitation in his ability to walk, stand, lift, carry, push and pull, and no limitation in his ability to sit or use his hands. Tr. 437. In April 2019, Dr. Nadarajah opined that Plaintiff had only a moderate limitation to climbing and no limitation in his ability to walk, stand, sit, lift, carry, push, pull, bend or use his hands. Tr. 439.

Contrary to Plaintiff's assertion (*see* ECF No. 7-1 at 11-12), the ALJ properly explained his rationale for finding Dr. Nadarajah's opinions "somewhat persuasive." Tr. 22-23. As the ALJ explained, other than noting Plaintiff's complaints of right knee and bilateral wrist pain in 2018, Dr. Nadarajah did not provide any objective findings to support her opined limitations. Tr. 22-23. 20 C.F.R. § 416.920c(c)(1). The ALJ also explained that in 2019, Dr. Nadarajah stated that Plaintiff's left wrist symptoms had resolved with surgery, and she anticipated improvement in his right knee pain; however, she did not provide more specific findings. Tr. 22, 438. The ALJ additionally observed that Dr. Nadarajah's opinions were partially consistent with the record

evidence documenting mild-to-moderate right knee pain that improved with injections and resolution of left-hand symptoms after surgery. Tr. 22. 20 C.F.R. § 416.920c(c)(2).

However, based on the totality of the evidence, the ALJ found Plaintiff more limited than opined by Dr. Nadarajah, which he was permitted to do. *See, e.g., Tammy Lynn B. v. Comm'r of Soc. Sec.*, 382 F. Supp. 3d 184, 195 (N.D.N.Y. 2019) ("There is nothing improper about an ALJ considering medical opinion evidence that assesses, say, few or no exertional limitations and then relying in part on the combined force of other record evidence, . . . . to nevertheless choose to assign certain limitations that result in a *more* restrictive RFC finding.) (internal citations omitted); *see also Matta*, 508 F. App'x at 56 ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."). As the ALJ explained, given the nature of Plaintiff's chronic knee pain, obesity and reports of hand pain, the longitudinal record indicated that Plaintiff had an ongoing limitation, which was inconsistent with Dr. Nadarajah's 2019 opinion of mostly intact functioning. Tr. 22, 439.

Plaintiff also argues that the ALJ "selective[ly] picked [the] least restrictive findings [from the opinions of Dr. Liu and Dr. Nadarajah]; and did not reconcile their moderate (and more restrictive) limitations that contradicted with the RFC finding. *See* ECF No. 7-1 at 11-12, 16. However, contrary to Plaintiff's argument, opinions of no more than moderate physical limitations are not inconsistent with light work. *See, e.g., Gerry v. Berryhill*, No. 17-CV-7371 (JS), 2019 WL 955157, at *3 (E.D.N.Y. Feb. 26, 2019) (mild-to-moderate limitations constitute substantial evidence in support of RFC for light work); *Bates v. Berryhill*, No. 17-CV-3311, 2018 WL 2198763, at *11 (E.D.N.Y. May 14, 2018) (finding that "mild-to-moderate limitation for sitting, and a moderate limitation in standing, bending, and lifting or carrying on a continuing basis"

supported the ALJ's RFC determination that the claimant could perform light work); *Harrington v. Colvin*, No. 14-CV-6044, 2015 WL 790756, at *13-15 (W.D.N.Y. Feb. 25, 2015) (compiling cases) (holding that the ALJ's finding that claimant could sit, stand, and walk for six hours a day was consistent with the opinion that he was moderately limited in his ability to walk for prolonged periods).

In addition to the opinions of Dr. Liu and Dr. Nadarajah, the ALJ also noted the prior administrative medical findings of state agency medical consultant D. Miller, D.O. ("Dr. Miller"), who reviewed the evidence on September 27, 2018, and opined that Plaintiff was able to occasionally lift and/or carry up to 20 pounds and frequently lift and/or carry up to ten pounds, and was able to sit/stand/walk for about six hours each in an eight-hour workday. Tr. 21, 71-73. Dr. Miller's opinion is also consistent with the RFC for light work. Tr. 18. *See* 20 C.F.R. 416.967(b).

Although Plaintiff contends that "it was improper [for the ALJ] to rely on Dr. Miller's incomplete written opinion," his argument fails. *See* ECF No. 7-1 at 11. First, the ALJ acknowledged that Dr. Miller did not have the benefit of additional evidence submitted at the hearing level, but reasonably found that "his opinion remains generally consistent with the record as a whole." Tr. 21. Second, and more importantly, Plaintiff fails to demonstrate that his condition significantly deteriorated following Dr. Miller's review of the record. A medical opinion may be stale if it does not account for a plaintiff's deteriorating condition. *See Carney v. Berryhill*, No. 16-CV-269, 2017 WL 2021529, at *6 (W.D.N.Y. May 12, 2017). But, where the submitted evidence did not directly contradict a doctor's opined limitations, and the ALJ analyzed the recent evidence, the doctor's opinion was not impermissibly stale. Such is the case here.

As the ALJ correctly observed, the objective findings following Dr. Miller's review of the record remained generally consistent. Tr. 21. Here, the ALJ noted that Plaintiff had mild-to-moderate tenderness in the right knee with mildly limited range of motion and mostly unremarkable imaging of the knee (Tr. 21, 276, 388, 521); and Plaintiff had intact strength and sensation (Tr. 521, 544). Tr. 21. The ALJ also noted that, while Plaintiff reported numbness and tingling in the extremities related to diabetes, he had normal examinations of the feet and normal monofilament testing. Tr. 21, 562. Plaintiff also had no significant associated symptoms including no episodes of hypoglycemia or hyperglycemia, no dizziness, and no nausea. Tr. 21, 533, 553, 577.

Moreover, to the extent the ALJ diverted slightly from Dr. Miller's opinion with respect to Plaintiff's ability to walk and/or stand, it was only to find that Plaintiff was more restricted by reducing the number of hours spent walking and/or standing from six hours to four hours and allowing him to use a cane to ambulate. Tr. 18. *See Ramsey v. Comm'r of Soc. Sec.*, 830 F. App'x 37, 39 (2d Cir. 2020) (affirming where ALJ in some instances deviated from opinions to decrease the plaintiff's RFC, based on other evidence in the record); Accordingly, Dr. Miller's assessment constitutes substantial evidence in support of the finding that Plaintiff could perform at least the RFC that the ALJ found. Tr. 21. *See Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993) ((the Commissioner's regulations permit the opinions of non-examining sources to constitute substantial evidence in support of the ALJ's decision); *Camille*, 652 F. App'x at 28 (the opinions of state agency medical consultants can constitute substantial evidence when supported by other evidence in the record); 20 C.F.R. § 416.913a(b)(1) (state agency medical consultants are highly qualified and experts in Social Security disability evaluation).

Furthermore, the ALJ was not required to rely on an opinion that mirrored the RFC, as Plaintiff's argues. *See id*. Plaintiff's argument wrongly presumes that RFCs are medical determinations, and thus, outside the ALJ's expertise. As noted above, RFC is an administrative finding, not a medical one. Ultimately, an ALJ is tasked with weighing the evidence in the record and reaching an RFC finding based on the record as a whole. *See Tricarico v. Colvin*, 681 F. App'x 98, 101 (2d Cir. 2017) (citing *Matta*, 508 F. App'x at 56). The regulations explicitly state that the issue of RFC is "reserved to the Commissioner" because it is an "administrative finding that [is] dispositive of the case." 20 C.F.R. §§ 404.1527(d), 416.927(d). The ALJ "will assess your residual functional capacity based on all of the relevant medical and other evidence," not just medical opinions. 20 C.F.R. § 404.1545(a); 20 C.F.R. §§ 404.1513(a)(1), (4), 416.913(a)(1), (4) (explaining that evidence that can be considered includes objective medical evidence, such as medical signs and laboratory findings; as well as evidence from nonmedical sources, including the claimant, such as from forms contained in the administrative record).

Thus, opinion evidence is only one type of evidence that an ALJ is required to consider. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e) ("we will assess the residual functional capacity based on all the relevant medical and other evidence in your case record"); 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3) (explaining that the adjudicator will assess the RFC based on all the relevant evidence in the case record); 20 C.F.R. §§ 404.1513(a)(1),(4), 416.913(a)(1),(4) (explaining that evidence that can be considered includes objective medical evidence, such as medical signs and laboratory findings; as well as evidence from nonmedical sources, including the claimant, such as from forms contained in the administrative record).

Here, in addition to the opinion evidence discussed above, the ALJ's RFC finding was also supported by the objective medical evidence and Plaintiff's reported activities of daily living. *See* 20

C.F.R. § 404.1529(c)(3) (providing that the SSA "will consider all of the evidence presented, including information about [a claimant's] prior work record, [a claimant's] statements about [his] symptoms, evidence submitted by [his] medical sources, and observations by [the SSA's] employees and other persons"). For example, the ALJ noted that, although Plaintiff reported a history of right knee pain beginning more than 10 years ago and progressively increasing, he also reported that x-rays of the knee taken in 2015 were normal. Tr. 19, 321. Furthermore, in November 2016, an x-ray of the knee showed a possible effusion, with no greater findings reported. Tr. 19, 290. A physical examination of the knee that month showed no joint tenderness; mildly limited passive range of motion; and full strength in the lower extremities. *Id*. Plaintiff reported using Voltaren gel for his knee pain, which "took the edge off." Tr. 19, 282.

On January 3, 2017, primary care physician Dr. Nadarajah noted that Plaintiff managed his knee pain with Voltaren gel, gabapentin, and the occasional use of Advil and Aleve. Tr. 19, 276. At that same visit, Plaintiff was advised that his "disability paperwork" could not be completed because his prior knee imaging had been negative. Tr. 280. The ALJ also observed that while Plaintiff reported that he required a cane for ambulation and that he sometimes used a motorized wheelchair, examinations showed that he had normal joints, bones, and muscles, and his right knee was non-tender to palpation and did not have decreased range of motion. Tr. 20, 41, 279, 385, 396. Plaintiff had 140 degrees of knee flexion on the right and full strength in the extremities and he could rise from a chair with difficulty. Tr. 20, 331-32.

Plaintiff's unremarkable right knee examination findings continued into January 2018, when he had only mild tenderness to palpation of the patella with minimal effusion. Tr. 20, 399. In April 2018, he had normal gait and station, and reported that he walked up the stairs of his building daily and could ambulate independently. Tr. 20, 390. Two months later, Plaintiff reported

16

using a cane for ambulation and using a wheelchair for walking more than a block. Tr. 20, 385, 388. However, an examination continued to show only mild right knee tenderness. Tr. 20, 388.

In July 2018, Plaintiff reported that his knee pain was chronic and intermittent, but an examination showed a mild valgus alignment, no effusion, moderate pain to palpation of the lateral joint line, passive range of motion -5-120 degrees of motion with minimal pain beyond 90 degrees, a positive McMurray test, negative drawer test, positive patellar grind, and full strength. Tr. 20, 403. Imaging revealed preserved joint spaces with no effusion. *Id*. After Plaintiff was treated with steroid injections to the knee, and two months later, he reported a 50-60% improvement in his pain; he was not taking any medication for his arthritis; and he only used his cane periodically. Tr. 20, 403-04, 422.

In March 2019, Plaintiff reported that his pain had returned, but an examination showed only mild tenderness to palpation of the knee and range of motion from 0-115 degrees. Tr. 20, 518. Plaintiff reported he was not taking any medication for his arthritis, and he used a cane "periodically." Tr. 518. Plaintiff underwent additional injections which provided moderate relief, and by July 25, 2019, he reported that he was "much improved" and his knees did "not bother him bad enough at this point to receive injections as he [was] feeling much better." Tr. 20, 524. An examination showed the right knee with full range of motion, minimal tenderness, no effusion, normal strength, and stability. *See id*.

The ALJ also discussed Plaintiff's history of Type II diabetes dating back to 2009. Tr. 20. 330. The record shows that Plaintiff's condition was stable in 2016, and he generally reported no complications in 2017, except for numbness and tingling in his hands and toes; however, on examination, he had no sensory deficit. Tr. 20, 330, 333. The ALJ noted some reports of numbness and tingling in the extremities, but also noted normal examinations of the feet and normal

monofilament testing (Tr. 562) and no significant associated symptoms, including no episodes of hypoglycemia or hyperglycemia, no dizziness, and no nausea (Tr. 533, 553, 577). Tr. 21.

In January 2018, Plaintiff presented with an elevated hemoglobin A1C level of 7.3% and poor glycemic control. Tr. 20, 396. Dr. Nadarajah noted that Plaintiff was non-compliant with his treatment; he was not checking his blood sugar and was not compliant with diet and exercise recommendations. *See id*. Treatment recommendations for diabetes management included medication, diet changes, exercise, and glucose checks at home. *Id*. At the same January 2018 visit, Dr. Nadarajah noted that Plaintiff had no known diabetic complications. Tr. 396. Renal function testing was intact. Tr. 20, 400.

The ALJ noted that in December 2018, Plaintiff had no polyuria, no polydipsia, and no polyphagia, but he again reported some numbness and tingling in his feet and was managed on gabapentin with some relief. Tr. 20, 513. Dr. Nadarajah advised Plaintiff to continue with his medication regimen and recommended portion control and the elimination of concentrated sweets from his daily diet. Tr. 517. As the ALJ also noted, treatment recommendations were reinforced multiple times through 2019; however, Plaintiff's hemoglobin A1C increased to 13.8%. Tr. 21, 575. Plaintiff also remained non-compliant with the recommended diet and exercise changes. Tr. 21, 533, 537, 559, 568, 575. In December 2019, Dr. Nadarajah noted that Plaintiff's A1C was "coming down however remains severely uncontrolled." Tr. 581. While Plaintiff reported some foot pain, examinations were normal including normal monofilament testing. Tr. 21, 536, 562, 575. At the hearing, Plaintiff admitted that when he was compliant with treatment recommendations, he was able to manage his diabetes well; however, he noted that he had trouble following diet recommendations at times. Tr. 21, 51-52.

In addition to the foregoing medical evidence, the ALJ also properly considered Plaintiff's wide ranging daily activities in concluding that his impairments did not preclude the performance of a light work with the use of a cane to ambulate. Tr. 21; *see* 20 C.F.R. § 404.1529(c)(3)(i) (An ALJ may consider the nature of a claimant's daily activities in evaluating the consistency of allegations of disability with the record as a whole.); *see also Ewing v. Comm'r of Soc. Sec.*, No. 17-CV-68S, 2018 WL 6060484, at *5 (W.D.N.Y. Nov. 20, 2018) ("Indeed, the Commissioner's regulations expressly identify 'daily activities' as a factor the ALJ should consider in evaluating the intensity and persistence of a claimant's symptoms.") (citing 20 C.F.R. § 416.929(c)(3)(i)); SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). For instance, in reports and testimony before the agency and at his consultative examination, Plaintiff admitted that he cared for his personal needs, cooked, cleaned, shopped, and laundered clothing. Tr. 21, 46, 168-70, 327, 331, 409. He also socialized with friends and family and was able to manage money. Tr. 48, 52-53, 170, 327, 409. *See Poupore*, 566 F.3d at 307 (ALJ properly considered the plaintiff's ability to care for child, vacuum, wash dishes, drive, read, watch television, and use a computer, in support of an RFC for light work).

Based on the foregoing, substantial medical evidence, as well as non-medical evidence, supported the ALJ's RFC finding. Plaintiff fails to show that any reasonable factfinder was compelled to assess greater restrictions based on this record, as is required under the substantial evidence standard of review. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) ("Smith had a duty to prove a more restrictive RFC, and failed to do so."); *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) (stating that under the substantial evidence standard of review, it is not enough for claimant to offer a different interpretation of the evidence, he must demonstrate that no reasonable factfinder could have weighed the evidence as the ALJ did in his decision).

In his second point of error, Plaintiff erroneously asserts that the ALJ found the opinions of Drs. Nadarajah and Shehata "vague and incomplete." *See* ECF No. 7-1 at 16-17. However, the ALJ did not find these opinions vague and incomplete. Rather, the ALJ properly evaluated Drs. Nadarajah and Shehata's opinions and explained why he found they were "somewhat persuasive" and "not fully persuasive," respectively. Tr. 22-24. As discussed above, the ALJ sufficiently articulated his rationale for finding Dr. Nadarajah's opinions somewhat persuasive, noting that Dr. Nadarajah did not provide objective findings to support her opined limitations, as well as her statements that Plaintiff's left wrist symptoms had resolved with surgery and that she anticipated improvement in Plaintiff's right knee pain. Tr. 22-23, 438.

Likewise, the ALJ sufficiently articulated his rationale for finding Dr. Shehata's May 2018 and June 2019 assessments not fully persuasive. Tr. 24, 383-84, 504-05. As the ALJ explained, Dr. Shehata's opinions were not well-supported and merely noted that Plaintiff had depression and anxiety, which "may" interfere with work, without any objective findings to support his assessments. Tr. 24, 504. As the ALJ also noted, Dr. Shehata's opinion that Plaintiff had "no evidence of limitation" in areas such as understanding and remembering, carrying out instructions, maintaining attention and concentration, making simple decision, interacting appropriately with others, maintaining socially appropriate behavior, and maintaining basic standards of personal hygiene, was consistent with the record as a whole, which documented intact mental status findings, ability to perform activities of daily living, and good management on medication. Tr. 24.

Similarly unavailing is Plaintiff's assertion that the ALJ should have recontacted Drs. Nadarajah and Shehata to "clarify" their opinions. *See* ECF No. 7-1 at 16-17. As previously explained, the ALJ properly evaluated these opinions for their persuasiveness and clearly explained his reasons for finding them less than fully persuasive. Contrary to Plaintiff's

mischaracterization of the ALJ's analysis, the ALJ did not find these opinions vague and incomplete, as Plaintiff argues, and thus, there is nothing to clarify. Furthermore, the ALJ was not obligated to recontact any physician. The Commissioner's regulations afford the ALJ discretion to determine whether the evidence in the record is adequate to make a disability determination and how best to resolve any inconsistencies. *See* 20 C.F.R. § 416.920b(c)(1). Further, an ALJ is not required to seek additional information absent "obvious gaps" in the administrative record that preclude an informed decision. *Rosa*, 168 F.3d 79, n.5; *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 9 (2d Cir. 2017); *Carvey v. Astrue*, 380 F. App'x 50, 53 (2d Cir. 2010). Here, there were no gaps in the record, and the ALJ had sufficient information on which to base the RFC finding.

Plaintiff additionally argues that the ALJ's RFC finding for light work was contradicted by the limitation to standing and/or walking for a total of four hours in an eight-hour workday. *See* ECF No. 7-1 at 9-10, 15. However, the ability to stand and/or walk for two to four hours in an eight-hour workday has been found to be consistent with an RFC for light work. *See Karen W. v. Comm'r of Soc. Sec.*, No. 1:20-CV-0267 (CJS), 2021 WL 4316557, at *5 (W.D.N.Y. Sept. 23, 2021) (affirming RFC for light work where plaintiff was limited to standing and/or walking for four hours in total in an eight-hour workday); *see also Harrington*, 2015 WL 790756 at *13, 14 (finding that a medical opinion that a claimant was "moderately" limited in sitting, standing and walking was not inconsistent with the ALJ's RFC that plaintiff could sit, stand, and walk for six hours a day.). For all the reasons discussed above, Plaintiff's challenges to the ALJ's RFC finding are meritless.

Finally, Plaintiff asserts that the ALJ failed to account for his mental limitations in the RFC finding. *See* ECF No. 7-1 at 16-19. However, Plaintiff's failure to challenge the ALJ's step two finding that Plaintiff's medically determinable impairments of major depressive disorder and

anxiety disorder were not severe undermines this argument. Tr. 16-17. *See, e.g., Samantha S. v. Comm'r of Soc. Sec.*, 385 F. Supp. 3d 174, 180 (N.D.N.Y. 2019) (rejecting plaintiff's argument that the RFC should have included environmental limitations because she did not first argue that she had an underlying condition, such as asthma, that was sufficiently severe to impose more than a minimal effect on her ability to work). In any event, the RFC finding was consistent with the ALJ's step two non-severe finding. *See Sherrill B. v. Comm'r of Soc. Sec.*, No. 17-CV-754, 2018 WL 4150881, at \*9 (N.D.N.Y. Aug. 30, 2018) ("Because the ALJ considered the objective medical evidence, Plaintiff's daily activities and the hearing testimony in determining that Plaintiff's diagnosed depression and anxiety did not impose any limitations on her RFC, the ALJ's determination was supported by substantial evidence."). Accordingly, Plaintiff's argument fails. Additionally, Plaintiff has not shown that he needs a more restrictive RFC finding than the one assessed by the ALJ, as was his burden. *See Poupore*, 566 F.3d at 305-06 (burden is on Plaintiff to show that he cannot perform the RFC as found by the ALJ).

Based on the foregoing, substantial evidence in the record supports the ALJ's RFC finding. When "there is substantial evidence to support either position, the determination is one to be made by the fact-finder." *Davila-Marrero v. Apfel*, 4 F. App'x 45, 46 (2d Cir. Feb. 15, 2001) (citing *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990)). While Plaintiff may disagree with the ALJ's conclusion, Plaintiff's burden was to show that no reasonable mind could have agreed with the ALJ's conclusions, which she has failed to do. The substantial evidence standard is "a very deferential standard of review – even more so than the 'clearly erroneous' standard," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude* otherwise." *Brault*, 683 F.3d at 448 (emphasis in the original). As the Supreme Court explained in *Biestek v. Berryhill*, "whatever the meaning of 'substantial' in other contexts, the

threshold for such evidentiary sufficiency is not high" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 139 S. Ct. at 1154 (internal citations omitted).

For all the reasons discussed above, the Court finds that the ALJ properly considered the record, including the treatment reports and the medical opinions, and the ALJ's findings are supported by substantial evidence. Accordingly, the Court finds no error.

## **CONCLUSION**

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 7) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 8) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

DON D. BUSH
UNITED STATES MAGISTRATE JUDGE